IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEVE B. SAIZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL NO.  SA-15-CV-789-XR |
| | § | |
| WESTERN BEVERAGES LIQUORS OF | § | |
| TEXAS, INC., d/b/a WB LIQUORS, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

On this date, the Court considered Defendant Western Beverages Liquors of Texas, Inc.'s Motion to Stay Proceedings and to Compel Arbitration.  Docket no. 8.  After careful consideration, the Court will GRANT the motion.

## FACTUAL BACKGROUND

Plaintiff Steve B. Saiz ("Saiz") began working for Defendant Western Beverages Liquors of Texas, Inc. ("Western") as a sales associate in May 2011.  Docket no. 1-1, 2.  As a condition of his employment, Saiz signed an arbitration agreement.  Docket no. 8-1, 3.  That agreement provides, in relevant part, the following:

> I hereby waive my right to sue the Company, and the Company hereby waives it[s] right to sue me, for any legal claim or cause of action including those relating to my hiring by the Company, my employment relationship with the Company, and my separation of employment from the Company arising out of or relating to my employment relationship with the Company or the termination thereof . . . and regardless of whether the legal claim or cause of action arose before or after this Agreement. In lieu of suing, any such legal dispute may instead be submitted for final and binding resolution by a private, impartial arbitrator. I understand that by entering into this Arbitration Agreement, I am waiving my right to a trial before a judge or jury. I agree that such arbitration shall be governed

by the Employment Dispute Resolution Rules of the American Arbitration Association.

. . . .

I understand that this Agreement covers the following potential claims:

1. Any dispute regarding the arbitrability of any such claim;
2. Any dispute regarding this Agreement, including but not limited to its enforceability, scope, or terms;
3. Any claim that could be asserted in court or before an administrative agency, including without limitation, claims for breach of any contract or covenant, express or implied; wrongful termination, assault, battery, false imprisonment, invasion of privacy, defamation, infliction of emotional distress, tortious interference with contract, or other tort claims, including any claim that I was injured or damaged because of the negligence of the Company or any of its employees; and claims for wrongful discharge and/or for violation of any federal, state or local law, statute, ordinance or regulation, or common law;
4. Any claim for discrimination, including but not limited to discrimination because of . . . age . . . or any other characteristics or conditions protected by statute, including, without limitation, claims arising under [T]itle VII of the Civil Rights [Act] of 1964, the Civil Rights Act of 1991, Title 42 U.S.C. § 1981, the Age Discrimination in Employment Act, the Americans with Disabilities Act and the Texas Commission on Human Rights Acts;
5. Any claim that I have been retaliated or discriminated against for opposing the violation of any federal, state or local statue or ordinance, including but not limited to the Fair Labor Standards Act, Title VII of the Civil Rights [Act] of 1964, the Civil Rights Act of 1991, Title 42 U.S.C. § 1981, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical [L]eave Act, the Texas Commission on Human Rights Act, the state workers' compensation law or any "whistleblower" law; and
6. Any claim for unpaid commissions, bonuses, or wages.

*Id.* at 3–5.

Saiz alleges that he was promoted to the position of Assistant Manager in October 2013, but that Regional Manager Manny Escobar removed him of that title because Saiz had not interviewed for the position. Docket no. 1-1 at 2. Saiz claims that the position was then awarded to a younger,

less experienced individual. *Id.* at 3. He also maintains that he applied for another promotion in August 2014 but that again, a younger, less experienced candidate was awarded the position. *Id.* In addition, he contends that he was terminated and retaliated against for participating in another employee's unemployment hearing. *Id.* at 4. He also claims that he was paid less than the hourly rate he was promised and that he worked numerous unpaid hours. *Id.* Saiz filed suit as a result of these alleged facts in state court in the 288th Judicial District of Bexar County, Texas, on August 28, 2015. *Id.* at 1. Western filed its Notice of Removal on September 9, 2015. Docket no. 1. It subsequently filed its Motion to Stay Proceedings and to Compel Arbitration on November 5, 2015. Docket no. 8.

Saiz did not file a response to the motion and the time for doing so has expired. Per Local Rule 7(e)(2), "[i]f there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed." W.D. Tex. Civ. R. 7(e)(2). Given that Saiz did not file a response, the local rule permits this Court to grant Western's motion as unopposed. Nonetheless, the Court will independently examine the merits of the motion.

## ANALYSIS

### I.   Arbitration analysis

Both Texas and federal policies strongly favor arbitration. *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 526 (5th Cir. 2000); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). In considering a motion to compel arbitration under the FAA, courts engage in a two-step analysis. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). The first step is to determine whether the parties have agreed to arbitrate the dispute. *Id.* If the parties are found to have agreed to arbitrate the dispute, the court continues to step two of the analysis. *Id.* The second step is to determine whether any federal statute or policy renders the

3

claims nonarbitrable. *Id.* In the absence of a contrary federal statute, arbitration should be compelled in accordance with the FAA. 9 U.S.C. § 3.

   A. <u>Have the parties agreed to arbitrate the dispute?</u>

First, a court must determine if the parties have agreed to arbitrate the dispute. *Sherer*, 548 F.3d at 381. This involves two factors: 1) is there a valid agreement between the parties to arbitrate and 2) does the dispute in question fall within the scope of that arbitration agreement? *Id.*

    *1. Is there a valid agreement between Saiz and Western to arbitrate?*

This Court finds that there is a valid agreement between Saiz and Western to arbitrate disputes. To begin, deciding this first step—whether or not there is a valid agreement to arbitrate between the parties—is a question for the Court to decide. *Will-Drill Res., Inc. v. Samson Res. Co.*, 253 F.3d 211, 212 (5th Cir. 2003) ("[W]here the very existence of any agreement to arbitrate is at issue, it is for the courts to decide based on state-law contract formation principles."). While Texas law governs, "[i]n applying state law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996) (internal citations omitted).

The Texas Supreme Court has held that an arbitration agreement between an employer and employee is valid and enforceable. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002). In *Halliburton*, Halliburton instituted a mandatory arbitration policy that required any dispute between the employer and an employee to be submitted to binding arbitration. *Id.* at 567. The employees were given notice of the effective date of the new policy and informed that remaining employed past that date would constitute acceptance of the policy. *Id.* When one employee was

later demoted, rather than proceeding in arbitration, the employee filed suit in state court. *Id.* The Texas Supreme Court held that such a clause was not unconscionable even though there may have been a disparity of bargaining power between the parties and that the agreement was valid and enforceable. *Id.* at 572–73.

It is uncontested that both Saiz and a representative of Western signed an agreement to arbitrate disputes related to Saiz's employment. Docket no. 8-1 at 3–6. That agreement requires both parties to submit their claims to an arbitrator. *Id.* at 3. Such mutually binding promises constitute valid consideration under Texas law. *See Halliburton*, 80 S.W. 3d at 569. Furthermore, the FAA mandates that a court "shall" enter an order directing arbitration where the parties have entered into an arbitration agreement. 9 U.S.C. § 4. Just as the Texas Supreme Court found that Halliburton's arbitration agreement between the company and its employees did not violate state law, this Court finds that the arbitration agreement between Saiz and Western does not run contrary to Texas law. For all of the above reasons, the Court finds that there is a valid agreement to arbitrate claims between Saiz and Western.

*2. Does this dispute fall within the scope of those arbitration agreements?*

Even if the Court finds that the parties have a valid agreement to arbitrate, in order to successfully move for arbitration, the dispute must fall within the scope of that agreement. *Sherer*, 548 F.3d at 381. Because the parties have agreed to arbitrate arbitrability, the Court cannot determine which of Saiz's claims fall within the scope of the arbitration agreement. Instead, this determination must be made by the arbitrator.

Ordinarily, the determination of whether a specific claim is subject to arbitration is a question for a court. *Crawford*, 748 F.3d at 262. "However, if the parties have clearly and unmistakably agreed to arbitrate arbitrability, certain threshold questions—such as whether a

particular claim is subject to arbitration—are for the arbitrator, and not a court, to decide." *Crawford* 748 F.3d at 262 (citation omitted). "'Just as the arbitrability of the merits of a dispute depends on whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter.'" *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)) (emphasis in original). The Fifth Circuit mandates that an arbitrator, not the court, must decide arbitrability if two factors are met: (1) the parties "clearly and unmistakably" intended to delegate this power to the arbitrator, and (2) the assertion of arbitrability is not wholly groundless. *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014).

    a. "Clearly and Unmistakably"

First, an arbitrator, and not a court, only has the power to decide the scope of an arbitration agreement if the parties "clearly and unmistakably" intended to delegate this power to the arbitrator. *Id.* An arbitration clause "need not recite verbatim that the parties agree to arbitrate arbitrability in order to manifest clear and unmistakable agreement." *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 765 F.3d 396, 410 n. 28 (5th Cir. 2014). Instead, express incorporation of the rules of the arbitration service constitutes "clear and unmistakable evidence" that the parties have agreed to arbitrate arbitrability. *Crawford*, 748 F.3d at 262–63 (citing *Petrofac*, 687 F.3d at 675).

The arbitration clause in the arbitration agreement incorporates the rules of the American Arbitration Association. Docket no. 8-1 at 3 ("I agree that such arbitration shall be governed by the Employment Dispute Resolution Rules of the American Arbitration Association."). Those rules provide: "The arbitrator shall have the power to rule on his or her own jurisdiction,

including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association, *Employment Dispute Resolution Rules*, 17 (2009), https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362&revision=latestreleased. As the Fifth Circuit explained in *Crawford*, incorporation of rules that provide for an arbitrator to determine his or her own jurisdiction into an arbitration agreement "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Crawford*, 748 F.3d at 262. Additionally, the arbitration agreement specifically notes that it covers "any dispute regarding the arbitrability of [a] claim." Docket no. 8-1 at 3. As such, the first factor is met— Saiz and Western have clearly and unmistakably agreed to arbitrate arbitrability.

   b. "Wholly Groundless"

Even though there is clear and unmistakable evidence that the parties have agreed to arbitrate arbitrability, an arbitrator should decide the issue only if the assertion of arbitrability is not wholly groundless. *Douglas*, 757 F.3d at 463–64. Under federal law, assertion of arbitrability is not wholly groundless if, on the one hand, there is a plausible and legitimate argument that the arbitration agreement covers the present dispute, and, on the other hand, a plausible and legitimate argument that it does not. *Douglas*, 757 F.3d at 463. Although such inquiry necessarily requires the court to examine the arbitration agreement, this inquiry is limited, and the resolution of the plausible and legitimate arguments regarding arbitrability must be reserved for the arbitrator—the Court's power is limited simply to determining whether or not a plausible argument exists. *Id.*

There is a plausible argument that the arbitration agreement covers this dispute. *See Douglas*, 757 F.3d at 463. Saiz states claims in his petition for age discrimination under both state and federal law, violations of the Fair Labor Standards Act ("FLSA"), retaliation, wrongful

discharge, breach of contract and related claims, and fraud. Docket no. 1-1 at 5–8. Each of these causes of action is expressly included in the arbitration agreement. Docket no. 8-1 at 3–4 (enumerating the claims covered by the agreement). Because this Court determines that there is at least a plausible argument that this dispute is covered by the arbitration agreement, the assertion of arbitrability is not "wholly groundless." As such, the Court has no choice but to order that the arbitrator decide any issues of arbitrability. The arbitrator must decide whether the arbitration clause encompasses all, some, or none of Saiz's claims.

    B.   <u>Does a federal statute or policy render the claims nonarbitable?</u>

Having determined that Saiz and Western did agree to arbitrate arbitrability, the Court proceeds to the next step in the analysis. While the Court finds that the scope of the arbitration agreement is a question for the arbitrator, the Court, for the sake of completeness, must still determine whether there is any federal statute or policy that renders an otherwise arbitrable dispute nonarbitrable. *See Sherer*, 548 F.3d at 381. There is none. Neither party has advanced any statute or policy that could render this dispute nonarbitrable. As Western points out in its motion, employment-related claims are often found to be subject to mandatory arbitration agreements. Docket no. 8 at 12 (citing several cases that ordered employment disputes to arbitration, including: *Washington v. Sears Logistics Servs., Inc.*, Civil Action No. 3:13-CV-3060-L, 2014 WL 2159253, at *5 (N.D. Tex. May 23, 2014); *Oubre v. Lundy Serv., Inc.*, No. 3:98-CV-2529-D, 1998 WL 907020, at *2 (N.D. Tex. Dec. 18, 1998); *In re Choice Homes, Inc.*, 174 S.W.3d 408, 413 (Tex. App.—Houston [14th Dist.] 2005, no pet.). As such, the federal and Texas policies favoring arbitration prevail.

    **II.**   **Stay of the proceedings**

In its motion, Western asks that the Court stay the case if it determines that the dispute should be sent to arbitration.  Docket no. 8 at 12.  The Fifth Circuit has noted that district courts have discretion to either dismiss or stay the case.  *Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 311 & n.9 (5th Cir. 2003) (finding that the decision of the district court to stay the case pending arbitration was not an abuse of discretion); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 679 (5th Cir. 1999) (holding that district court did not abuse its discretion by dismissing the case without prejudice in favor of arbitration).  Furthermore, the Federal Arbitration Act provides that the Court shall stay the case pending resolution of the arbitration upon application of a party.  Federal Arbitration Act, 9 U.S.C. § 3 (2012).  Western has asked the Court for a stay rather than dismissal.  Docket no. 8 at 12.  The Court will therefore exercise its discretion to stay this action pending resolution of the arbitration.

## CONCLUSION AND ORDERS

Western's Motion to Dismiss and Compel Arbitration (docket no. 8) is GRANTED.  All claims are hereby ordered to arbitration, and the case is STAYED pending resolution of the arbitration.  Because all proceedings in this case are stayed pending resolution of the arbitration, this case is appropriate for administrative closure.  *Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) ("District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending).  The effect of an administrative closure is no different from a simple stay . . ."); *see also CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 250 (5th Cir. 2006).

The Clerk's office is DIRECTED to administratively close this case pending further order of the Court.  Though administratively closed, this case will still exist on the docket of this Court

and may be reopened upon request of any party or on the Court's own motion. *Mire*, 389 F.3d at 167. Western is ordered to file quarterly status reports on the progress of the arbitration, beginning **March 8, 2016**.

It is so ORDERED.

SIGNED this 8th day of December, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE